UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HUTHWAITE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06 C 1548 |
| ) | Judge Joan H. Lefkow |
| ) | |
| RANDSTAD GENERAL PARTNER (US), ) | Hon. Arlander Keys, |
| L.L.C., ) | Magistrate Judge |
| and ) | |
| RANDSTAD NORTH AMERICA, L.P. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff in this copyright infringement case, Huthwaite, Inc. ("Huthwaite"), has moved to dismiss the defendants' counterclaims and to strike two of their affirmative defenses. The defendants are Randstad General Partner (US), L.L.C. and Randstad North America, L.P. (collectively, "Randstad"). Randstad's counterclaims against Huthwaite are for fraud and breach of contract, and its affirmative defenses at issue here are lack of standing and patent misuse or unclean hands.

In reviewing a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6), the court, just as it does on a motion to dismiss a complaint, considers all well-pleaded allegations in the counterclaim to be true and draws all reasonable inferences in favor of the counter-claimant. *Papa John's Intern., Inc. v. Rezko*, 2006 WL 1697134, at *1 (N.D. Ill. June 14, 2006); *Byczek v. Boelter Cos., Inc.*, 264 F. Supp. 2d 720, 722 (N.D. Ill. 2003) (citing *N. Trust*

1

*Co.* v. *Peters*, 69 F.3d 123, 129 (7th Cir.1995)). Dismissal is appropriate only if it appears beyond a doubt that the counter-claimant can prove no set of facts in support of its claim that would entitle it to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101 (1957); *McCready* v. *eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

To determine whether an affirmative defense is "insufficient" and should be stricken under Federal Rule of Civil Procedure 12(f), the court applies a three part test. *Bobbitt* v. *Victorian House, Inc.*, 532 F. Supp. 734, 737 (N.D. Ill. 1982). First, the matter must be an appropriate affirmative defense. *Id.* Second, the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9. *Id.* Third, the affirmative defense must meet the Rule 12(b)(6) standard. *Id.* Therefore, in considering a motion to strike, like a motion to dismiss a counterclaim, the court must consider all well-pleaded allegations in the defenses to be true, draw all reasonable inferences in favor of the defendant, and only grant the motion to strike if it appears beyond doubt that the defendant cannot prove any set of facts in support of its defenses that would bar the plaintiff from relief. *Circle Group Holdings, Inc.* v. *Akhamzadeh,* 2006 WL 2548164, at *7 (N.D.Ill. Sept. 1, 2006) (citing *Conley* v. *Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101 (1957); *Williams* v. *Jade Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir.1991); *Fried Trading Co.* v. *Austern*, 1987 WL 4773, *1 (N.D.Ill.1987)).

1.  **Facts**

The relevant facts, taken from the pleadings and drawing all reasonable inferences in favor of Randstad, are as follows. Huthwaite, a provider of corporate sales effectiveness training services, claims the copyright in two books, "SPIN Selling" and "Major Account Sales Strategy." Compl. ¶¶ 10-11. Randstad is a business that offers employment services. Am. Answer ¶ 6.

Some of Randstad's employees had access to "SPIN Selling." Am. Answer ¶ 13. Both are Delaware companies that do business in Illinois. Compl. ¶ 1; Am. Answer ¶¶ 1, 4-6.

The relationship between Huthwaite and Randstad began in October of 2005, when a representative of Huthwaite contacted Alison McIsaac, a manager at Randstad, to discuss ways that Huthwaite could assist Randstad with improving its sales training materials and programs. Countercl. ¶ 8. Huthwaite told Randstad that it was aware that Randstad used SPIN selling "techniques" in its sales effectiveness training. Countercl. ¶ 9. Huthwaite represented that it did not intend to sue Randstad for that use, and that Randstad should not be concerned about such a legal dispute if it decided to continue discussions with Huthwaite. Countercl. ¶ 9. In reliance on Huthwaite's representations, Randstad continued with the discussions. Countercl. ¶ 9. Many of the discussions occurred with Randstad representatives in Georgia. Countercl. ¶ 10.

In January of 2006, Huthwaite represented that in order to provide its services to Randstad, it needed to review Randstad's training materials to determine what Randstad sales agents knew about sales techniques. Countercl. ¶ 13. Randstad was reluctant to turn its materials over in part because of the possibility of subjecting itself to a copyright infringement lawsuit. Countercl. ¶ 14. On several occasions, Huthwaite represented that it would not use the materials for any purpose other than in connection with the parties' discussions. Countercl. ¶ 15. For example, Huthwaite said that it knew Randstad was using SPIN selling techniques and that if Randstad disclosed its materials, Huthwaite would not sue for copyright infringement because "we [Huthwaite] are not in the business of suing our customers [Randstad]." Countercl. ¶ 16.

The parties executed a Mutual Non-Disclosure Agreement (the "NDA") in which Huthwaite agreed that it would maintain the confidentiality of Randstad's materials and not use

them for any purpose not related to the parties' discussions. Countercl. ¶ 18. In reliance on Huthwaite's representation that it would not sue Randstad, Randstad gave Huthwaite copies of its sales training materials. Countercl. ¶ 19. Two days later, Huthwaite sent Randstad a demand letter in which it threatened to file a lawsuit against Randstad for copyright infringement based on the materials that Randstad provided. Countercl. ¶ 20.

Randstad's theory is that it is one of many companies that have been targeted in a broad scheme to impermissibly leverage copyrights. Countercl. ¶ 25. Huthwaite identifies companies that use widely-understood sales techniques, fraudulently induces those companies to disclose their sales training material, and then uses those materials to threaten the companies with copyright infringement litigation if they do not retain Huthwaite's services or pay an exorbitant settlement to Huthwaite. Countercl. ¶¶ 25-26.

## 2. Counterclaims

To determine whether the counterclaims should be dismissed, the court must first determine what substantive law applies. *Precision Screen Machines, Inc. v. Elexon, Inc.*, 1996 WL 495564, at *2 (N.D. Ill. Aug. 28, 1996). This court has federal question jurisdiction over Huthwaite's copyright claims under 28 U.S.C. §§ 1331 and 1338. The court also has jurisdiction over Randstad's fraud and breach of contract counterclaims under 28 U.S.C. § 1367, because they arise out of the same facts and circumstances as Huthwaite's copyright claims. The counterclaims are not governed by federal law, however, so this court must ascertain and apply state law. *Precision Screen Machines*, 1996 WL 495564, at *2 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938)). When a federal court applies state law, it uses the choice of law principles of its forum state to determine which state's law to apply.

*Salton, Inc.* v. *Philips Domestic Appliances and Personal Care B.V.*, 391 F.3d 871, 879 (7th Cir. 2004). Therefore, this court will use Illinois choice of law principles to determine which state's law applies to Randstad's fraud counterclaim and Randstad's breach of contract counterclaim.

a.   **Fraud**

Randstad's first counterclaim is for common law fraud. Illinois law applies the "most significant relationship" test of the Second Restatement of Conflict of Laws to determine what substantive law applies to tort claims, such as fraud. *Barbara's Sales, Inc.* v. *Intel Corp.*, ___ N.E.2d ___, 2006 WL 2105656, at *4-5 (Ill. App. Ct. July 25, 2006) (citing Restatement (Second) Conflict of Laws § 6(2) (1971)); *see also Clark* v. *Experian Info. Solutions, Inc.*, 2005 WL 1027125, at *2-3 (N.D. Ill. Apr. 26, 2005); *Precision Screen Machines*, 1996 WL 495564, at *3 (citing *Ingersoll* v. *Klein*, 262 N.E.2d 593, 596, 46 Ill. 2d 42, 47-48 (Ill. 1970)); *Lee White Toyota, Inc.* v. *Gen. Elec. Capital Corp.*, 1993 WL 338884, at *7 (N.D. Ill. 1993).

To determine the state with the most significant relationship, Illinois courts consider, along with the general considerations found in the Restatement, (1) the place where the injury occurred, (2) the place where the conduct occurred, (3) the parties' domiciles, nationality, place of incorporation, and place of business, and (4) the place where the parties' relationship is centered. *Barbara's Sales*, 2006 WL 2105656 at *5 (citing *Ingersoll*, 262 N.E.2d at 596, 46 Ill. 2d at 47-48). The place of injury is sometimes the most important factor for tort cases. *See, e.g., Wreglesworth ex rel Wreglesworth* v. *Arctco, Inc.*, 738 N.E.2d 964, 971, 316 Ill. App. 3d 1023, 1031 (Ill. App. Ct. 2000).

The Restatement also provides specific factors to consider in a case involving a fraud claim where the plaintiff's action in reliance took place in a state other than where the alleged

5

misrepresentations were made. Restatement (Second) Conflict of Laws § 148(2) (1971). These factors are:

> (a) the place... where the plaintiff acted in reliance..., (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicil[e], residence, ...place of incorporation, and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Id.*

While some of the factors that the court must consider weigh in favor of applying Georgia law, such as the place where the injury occurred,[1] the place where the plaintiff received the representation, and the place where the plaintiff acted in reliance, others weigh in favor of Illinois law, such as the fact that both parties do business in Illinois. Ultimately, considerations of Illinois' interest in determining Huthwaite's liability, and the similarity of this case to the facts and reasoning in *Barbara's Sales* convince this court that Illinois law should apply to the fraud counterclaim.

In *Barbara's Sales*, Intel was accused of unfair business practices in marketing its Pentium 4 microchip. *Barbara's Sales*, 2006 WL 2105656, at *1. Although the plaintiffs' injuries occurred in each of their home states, and Intel's statements presumably reached each of them there, the court found that California, Intel's home state, had the strongest interest in having its regulatory scheme applied to Intel's conduct because that was where Intel had its principal

---

[1] Although it is at least arguable that the place that the injury occurred is actually Chicago, for the purposes of this motion the court will assume that the place of injury is Georgia, as Randstad claims. Randstad's Opp. Mot. Dismiss Am. Counterclaims and Mot. Strike Am. Affirmative Defenses, Dkt No. 52 ("Randstad's Br."), at 10.

6

place of business and where the conflict that led to the injuries originated. *Id.* at *5. Furthermore, the needs of the interstate system and the interests of predictability and uniformity of result weighed in favor of one forum with one result. *Id.* While this case is not a class action, as *Barbara's Sales* was, Randstad has alleged that Huthwaite has embarked on a broad campaign involving many companies, and therefore the same considerations apply. Illinois, as the alleged home base of Huthwaite's actions against various companies located in several different states, has a strong interest in regulating Huthwaite's conduct.

Having determined that Illinois law applies, the question remains whether Randstad has adequately stated its counterclaim for fraud. To plead common law fraud in Illinois, a plaintiff must allege "(1) a false statement of material fact, (2) known or believed to be false by the party making it, (3) intent to induce the other party to act, (4) action by the other party in reliance on the truth of the statement,[2] and (5) damage to the other party resulting from such reliance." *Soules v. Gen. Motors Corp.*, 402 N.E.2d 599, 601, 79 Ill. 2d 282, 286 (Ill. 1980) (citations omitted); *Addison v. Distinctive Homes, Ltd.*, 836 N.E.2d 88, 92, 359 Ill. App. 3d 997, 1000 (Ill. App. Ct. 2005). In a case involving promissory fraud (that is, where the alleged misrepresentation involves a promise to do (or not do) something in the future), an additional element must be pled: a "scheme" to defraud. *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999); *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995) (holding that "promissory fraud is actionable only if it either is particularly egregious or, what

---

[2] Illinois courts sometimes require that this be justifiable reliance. *See, e.g., Houben v. Telular Corp.*, 231 F.3d 1066, 1074 (7th Cir. 2000) (citations omitted); *Siegel v. Levy Org. Dev. Co.*, 607 N.E.2d 194, 198, 153 Ill. 2d 534, 542-543 (Ill. App. Ct. 1992) (citations omitted).

7

may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy.") These elements must all be pled in compliance with Federal Rule of Civil Procedure 9(b), meaning that the plaintiff must state "with particularity" the "circumstances constituting fraud." Fed. R. Civ. P. 9(b). The plaintiff must plead the "who, what, when, where, and how." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *See v. Strunk*, 2006 WL 2916819, at *9 (C.D. Ill. Oct. 10, 2006).

The facts of *Desnick* regarding what constitutes a "scheme" are relevant to this case. A reporter contacted a medical doctor who ran a clinic and proposed doing a story on the clinic. *Desnick*, 44 F.3d at 1347-48. The reporter assured the doctor that the segment would not involve "'ambush' interviews or 'undercover' surveillance, and that it would be 'fair and balanced.'" *Id.* at 1348. Of course, it did not turn out to be so, and the doctor sued for fraud based on the reporter's promises. *Id.* at 1354. The court reasoned that the breaking of the reporter's promises could not be considered to constitute the requisite "scheme to defraud," because the doctor should have been aware of the risk and because the scheme was really only one to expose any wrongdoing that was discovered, which is not fraudulent. *Id.* at 1355.

Here, Randstad alleges that Huthwaite made a similar promise, in that if allowed into Randstad's property (here, Randstad's proprietary information instead of its physical premises), that it would not use anything it learned against Randstad, even specifically mentioning a copyright infringement lawsuit. Countercl. ¶¶ 7-19. Perhaps predictably, only 2 days after receiving Randstad's materials, Huthwaite threatened Randstad with filing a copyright infringement lawsuit based on its review of Randstad's materials. Countercl. ¶ 20. While this is

8

a strong allegation that Huthwaite did not intend to honor its promise, under *Desnick*, it is not sufficient to allege a scheme to defraud because Randstad was well aware of the risk it was taking and the specific misrepresentations alleged thus far cannot be held to be particularly egregious. Randstad's allegations that Huthwaite has similarly defrauded other companies cannot save its counterclaim, at least because those allegations are far from specific enough to satisfy Rule 9(b)'s particularity requirements. Countercl. ¶ 25-26. Therefore, Randstad's fraud counterclaim is dismissed without prejudice.

### b. Breach of Contract

Randstad's second counterclaim is for breach of the NDA. Under Illinois's choice of law principles, if a contract includes a choice of law provision, it will be given effect unless it is in some way contrary to Illinois public policy. *Precision Screen Machines*, 1996 WL 495564, at *2 (citing *Vencor, Inc. v. Webb*, 33 F.3d 840, 844 (7th Cir. 1994)). The NDA, which can be considered on a motion to dismiss, *McCready*, 453 F.3d at 891, includes such a choice of law clause, and it chooses Virginia law. Am. Answer, Ex. A. Because neither party argues that the application of Virginia law would violate Illinois public policy, the court will give effect to the parties' agreement and apply it.

The elements of a breach of contract action in Virginia are as follows: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of that obligation." *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 48, 271 Va. 72, 80 (Va. 2006) (citation omitted). These elements must be pled in compliance with the notice pleading requirements of Rule 8(a). *Koken v. Aon Risk Servs., Inc.*, 2006 WL 90068, at *3 (E.D. Va. Jan. 13, 2006). Notwithstanding these

requirements, however, the parties to a contract may change the conditions that will trigger a party's right to recover for the other party's breach of their agreement, as long as their changes do not violate public policy. *Ulloa*, 624 S.E.2d at 48. In at least some instances, such as in *Ulloa*, the parties may agree to change or eliminate the requirement of showing damages for either of them to bring a claim for breach. *Id.*

Huthwaite first argues that enforcement of the NDA to prevent it from bringing a copyright infringement lawsuit would violate public policy because it would take away its right to sue to protect its copyright. Huthwaite's Mem. Supp. Mot. Dismiss Am. Counterclaims and Mot.Strike Am. Affirmative Defenses, Dkt No. 49 ("Huthwaite's Br."), at 3. Covenants not to sue by their very nature are agreements not to sue when a party otherwise could. If the parties bargained for this to be the effect of the NDA (a question that is discussed below), it is not against public policy; covenants not to sue are regularly enforced by the courts. *Downer v. CSX Transp., Inc.*, 507 S.E.2d 612, 613, 256 Va. 590, 592 n1 (Va. 1998) (citing Va. Code. Ann. § 801-35.1 (West 2006)); *Morrison v. Star City Roller Skating Cts, Inc.*, 26 Va. Cir. 335, 1992 WL 884411, at *2 (Va. Cir. Ct. 1992) (citing *Nat'l Motels, Inc. v. Howard Johnson, Inc.*, 373 F.2d 375, 379 (4th Cir. 1967) (applying Virginia law); *Chesapeake & Ohio Ry. Co. v. Clifton Forge-Waynesboro Tel. Co.*, 224 S.E.2d 317, 216 Va. 858 (Va. 1976); *Lackey v. Brooks*, 204 Va. 428, 132 S.E.2d 461 (1963)); *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 249 (7th Cir. 1994). The one case cited by Huthwaite does not apply. Unlike *Lachman v. Sperry-Sun Well Surveying Co.*, 457 F.2d 850, 851-52 (10th Cir. 1972), this case does not involve a party who promised not to disclose the other party's confidential information and only later learned that the other party was violating the law and causing injury to a third party.

10

The portion of the NDA at issue here says the following:

> All Confidential Information furnished by the Disclosing Party shall be held, treated, preserved, and maintained in the strictest of confidence, will not be disclosed to any other person or entity, and ***will not be used by the Receiving Party for any purpose not related to the Discussions.*** The Receiving Party will disclose Confidential Information only to its employees, advisors, agents, officers, directors, and representatives who are bound by separate written agreements to keep it confidential, and will disclose it only to the extent necessary for the Discussions to be effectuated. The Receiving Party will be responsible to the Disclosing Party in the event any such person violates this NDA to the same extent as if it was the Receiving Party who violated it.

Am. Answer, Ex. A, at 2 (emphasis added). There is also an integration clause: "This NDA sets forth the entire agreement between the parties hereto as to the subject matter hereof and supersedes all prior discussions, commitments, agreements, arrangements, and understandings of any nature between the Parties hereto relating to the subject matter hereof." *Id.* at 3.

Huthwaite misconstrues Randstad's argument regarding the alleged breach. It frames Randstad's argument as follows: because Randstad produced materials under a non-disclosure agreement, Huthwaite cannot sue Randstad for copyright infringement. Huthwaite's Br., at 2. Randstad's theory is more developed than that. It argues that the parties' communications regarding Randstad's use of SPIN selling techniques and Huthwaite's promise not to sue Randstad for that use formed the basis for their decision to enter into the NDA. Randstad's Br., at 7. Huthwaite's responses are that it did not "use" the information in violation of the NDA, that nevertheless the allegedly infringing portions of Randstad's documents are not Randstad's confidential information and fall into an exception to the NDA for information previously known by Huthwaite, and that Randstad has not adequately alleged an injury due to the breach.

In order to determine whether Randstad has stated a claim of breach of the NDA, an

11

important issue is the meaning of the word "use" in the NDA. In the interpretation of contracts, Virginia adheres to the plain meaning rule, and so will this court. "It is the duty of the court to construe contracts as they were made by the parties and to give full effect to the language they used, where that language is plain, clear, and unambiguous." *Justice* v. *Colen*, 55 Va. Cir. 392, 2001 WL 34048138 (Va. Cir. Ct. July 10, 2001) (citing *Marriott Corp.* v. *Combined Properties, Ltd.*, 391 S.E.2d 313, 239 Va. 506 (Va. 1990)).

Huthwaite argues that "use" should be interpreted according to the Restatement (Third) of Unfair Competition to mean "marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret." Huthwaite's Br., at 4 (citing Restatement (Third) of Unfair Competition, § 40 Comment c (1995)). This is a restrictive interpretation of an otherwise very flexible word, however, and there is no evidence that the parties intended to incorporate unfair competition law into their NDA. In contrast, the American Heritage Dictionary defines "use" as "to put into service or apply for a purpose; employ." American Heritage Dictionary of the English Language (4th Ed., retrieved Oct. 20, 2006 from Dictionary.com website, available at http://dictionary.reference.com/browse/use).

Randstad has alluded to the existence of extrinsic evidence of the parties' intent regarding what the term "use" was supposed to mean in the NDA, including the parties' communications about Randstad's use of SPIN selling techniques that occurred before the NDA was signed. Randstad's Br., at 7. Huthwaite, perhaps in anticipation of that argument, points to the integration clause of the agreement to argue that the NDA does not contain any covenant not to

12

sue. Huthwaite's Br., at 1 n1. Because the word "use" could cover such a broad range of actions, it would be helpful to consider additional evidence regarding the parties' intent when entering into the NDA. Despite the existence of the integration clause, Virginia law allows the court to consider extrinsic evidence that is consistent with the terms of the contract. *Prospect Dev. Co., Inc. v. Bershader*, 515 S.E.2d 291, 296, 248 Va. 75, 84-85 (Va. 1999); *Justice v. Colen*, 2001 WL 34048138, at *2. To do so on a motion to dismiss, however, would require conversion to summary judgment. Fed. R. Civ. P. 12(b); *Loeb Indus. v. Sumitomo Corp.*, 306 F.3d 469, 478-79 (7th Cir. 2002). Before doing this, the court will move on to determine if Huthwaite has shown any other bases to find that Randstad cannot prove facts entitling it to relief.

Huthwaite also argues that because the portions of Randstad's materials that are at issue here allegedly infringe Huthwaite's copyrights, they cannot be considered Randstad's confidential information under the NDA and therefore, use of them does not constitute breach. This argument is an attempt at an end run around any covenant not to sue that might be included in the NDA, because in order to determine whether the information was copied from Huthwaite and therefore not Randstad's confidential information, the parties would have to resort to the litigation process and determine whether the excerpts were "substantially similar," which robs the NDA of its value to Randstad. *Incredible Technologies, Inc. v. Virtual Technologies, Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005). Furthermore, the materials do belong to Randstad, regardless of whether they infringe Huthwaite's copyrights, and according to Randstad, only portions of them are alleged to be infringing. Aff. Defenses, at ¶ 1.

Huthwaite has another argument, which is similar to the previous one: because the

13

portions of Randstad's materials at issue here infringe its patents, they fall into the "previously known" exception to the definition of confidential information.[3] Like the previous one, this argument is not persuasive. Huthwaite does not dispute that it did not know what text was contained in Randstad's sales materials, which is the relevant knowledge at issue here.

Finally, the parties dispute the sufficiency of Randstad's allegations of injury. Huthwaite's main point is that Randstad has not pled injury as a result of the alleged breach because Huthwaite would have sued anyway. Huthwaite's Br., at 5. This argument also fails. Huthwaite represents to the court that "Ranstad pleads (and thus judicially admits) that Huthwaite knew of Randstad's unauthorized use of the copyrighted SPIN model - and, consequently, had a basis for suing Randstad - even before it received Randstad's training materials." Huthwaite's Br., at 5. Randstad did not admit that. In its first counterclaim, Randstad pled that Huthwaite represented to it that "Huthwaite generally was aware that Randstad used SPIN selling techniques in its sales effectiveness training." Countercl. ¶ 9. There is no basis to construe this statement as an admission that Randstad was infringing Huthwaite's copyrights. Huthwaite cannot protect sales ideas or techniques with its copyright as it might with a patent. "Copyright does not protect ideas; it protects only the author's particularized expression of the idea." *Pivot Point Intern., Inc. v. Charlene Products, Inc.*, 372 F.3d 913, 929 (7th Cir. 2004). Therefore, Huthwaite's knowledge that Randstad was using SPIN selling *techniques* in its training does not translate into having a basis for a copyright infringement lawsuit. Huthwaite

---

[3] "Confidential Information" is defined as excluding "any information which... is known to the Receiving Party prior to disclosure by the Disclosing Party, provided such prior knowledge is evidenced by the Receiving Party's written records existing prior to such disclosure." Am. Answer, Ex. A, at 1.

14

has not shown that this copyright infringement lawsuit was not the result of its use of Randstad's confidential information. Huthwaite's motion to dismiss Randstad's second counterclaim, breach of contract, is denied.

3. **Affirmative Defenses**

   a. **Randstad's Affirmative Defense Number 4: Lack of Standing**

Randstad's first affirmative defense at issue here is lack of standing. Randstad argues that "[b]ased on the copyright registrations provided as Exhibits to the Complaint, Huthwaite does not appear to have any interest in the copyrights related to Spin Selling and Major Account Sales Strategy." Affirmative defenses ¶ 4.

Although Huthwaite did not raise this argument, the court notes that lack of standing is not an affirmative defense under federal law. *Native Am. Arts, Inc. v. Waldron Corp.*, 253 F. Supp. 2d 1041, 1045 (N.D. Ill. 2003). It is true that only the legal or beneficial owner of an exclusive right under a copyright is entitled to bring an infringement suit. 17 U.S.C. § 501(b); *Moran v. London Records, Ltd.*, 827 F.2d 180, 182 (7th Cir. 1987); *DBT Group, Inc. v. FMC Corp.*, 2001 WL 1105077, at *5 (N.D. Ill. Sept. 19, 2001). But it is the burden of the complainant, not the defendant, to prove that he has standing to bring the case. *Althin CD Med., Inc. v. West Suburban Kidney Ctr., S.C.*, 874 F.Supp. 837, 840 (N.D. Ill. 1994) (citing *Warth v. Seldin*, 422 U.S. 490, 518, 95 S. Ct. 2197, 2215, 45 L. Ed. 2d 343 (1975)). A challenge to standing would be more properly brought on a motion to dismiss Huthwaite's complaint. *Native Am. Arts, Inc.*, 253 F. Supp. 2d at 1045. Therefore, Huthwaite's motion to strike Randstad's affirmative defense number 4 is granted. Because this is a pleading deficiency, amendment would be futile, and therefore Randstad does not have leave to replead this defense.

### b. Randstad's Affirmative Defense Number 5: Copyright Misuse/Unclean Hands

Copyright misuse and unclean hands are equitable doctrines with common origins and similar requirements. *qad, Inc. v. ALN Associates, Inc.*, 974 F.2d 834, 836 (7th Cir. 1992). Both can be properly raised as an affirmative defense to a copyright infringement lawsuit. *Id.*; *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, 2003 WL 1720073, at *5 (N.D. Ill. Mar. 31, 2003) ("*Ocean I*").

Copyright misuse, similar to patent misuse, is analyzed using conventional antitrust principles. *Do it Best Corp. v. Passport Software, Inc.*, 2005 WL 743083, at *7 (N.D. Ill. Mar. 31, 2005); *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, 2004 WL 2203423, at *8 (N.D. Ill. Sept. 29, 2004) ("*Ocean II*") (citations omitted). In order to raise copyright misuse, parties generally allege that the copyright holder is attempting to leverage the limited monopoly granted by the copyright to gain control over areas outside that monopoly. *WIREdata*, 350 F.3d at 646-647; *Do it Best*, 2005 WL 743083, at *7; *Ocean II*, 2004 WL 2203423 at *8. Huthwaite is correct that the mere filing of a copyright infringement lawsuit is not grounds for a copyright misuse claim. *Huthwaite, Inc. v. Ecolab, Inc.*, 2006 WL 929262, at *2 (N.D. Ill. Jan. 4, 2006). On the other hand, parties have not been required to allege conduct that rises to the level of an antitrust violation. *WIREdata*, 350 F.3d at 647.[4]

---

[4] The court notes that Huthwaite's briefs contain at least one example of mis-cited law. In its opening brief, Huthwaite stated that "[t]he Seventh Circuit does not recognize a 'copyright misuse' defense to infringement unless it rises to the level of an antitrust violation." Huthwaite's Br., at 10 (citing *Assessment Tech. Of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 647). After this point was rightly disputed in Randstad's opposition, Huthwaite recognized its error in a concerning way: "As *Randstad concedes*, the Seventh Circuit did not in WIREdata resolve the issue of whether it recognizes a copyright misuse defense unless it rises to the level of an antitrust violation." Huthwaite's Reply Mem. Supp. Mot. Dismiss Am. Counterclaims and Mot.

16

Randstad's amended answer is sufficient to put Huthwaite on notice of a copyright misuse defense. It claims that "over the past several years, Huthwaite has engaged in a practice of identifying users of SPIN sales techniques and then threatening those users with legal action if they did not make demanded payments and/or purchase Huthwaite's sales training services." Affirmative defenses ¶¶ 5-6. Elsewhere in its affirmative defenses, Randstad also alleges that "the material alleged to have been copied is generally known and understood by the public and not subject matter that is unique to [the allegedly infringed works]." Affirmative defenses ¶5. These statements could be read to allege that Huthwaite is attempting to use its copyrighted books to cover the unprotectible ideas within those books by filing copyright infringment lawsuits and forcing companies such as Randstad to either settle or incur litigation expenses. Assuming for the purposes of this motion that these allegations are true, Randstad has properly raised a copyright misuse defense.

Randstad has also adequately pled an unclean hands defense. Unclean hands requires misconduct, fraud, or bad faith on the part of the plaintiff, directed towards the defendant, in connection with the transaction that is the subject of the complaint. *Ocean I*, 2003 WL 1720073, at *5; 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.09(B) (2006). If fraud is alleged as the basis for this defense, Rule 9(b) of the Federal Rules of Civil Procedure applies. *Ocean I*, 2003 WL 1720073, at *5; Fed. R. Civ. P. 9(b). The defense has been applied where the plaintiff misused the process of the courts (for example, by misrepresenting the scope of his copyright to the court or opposing party), and where the plaintiff obtained information

---

Strike Am. Affirmative Defenses, Dkt No. 56, at 9 (emphasis added). Huthwaite is hereby reminded of its Rule 11 obligations regarding representations to the court.

about the nature of defendant's work through unfair means. 4 Nimmer, *supra* at § 13.09(B); *Colonial Book Co., Inc.* v. *Oxford Book Co., Inc.*, 45 F. Supp. 551, 553 (S.D.N.Y. 1942).

Randstad alleges at least that Huthwaite acted in bad faith in obtaining Randstad's confidential information through unfair means. It does not rest on the mere filing of this infringement case, but focuses on the circumstances surrounding it and the connection of those circumstances with the filing, such as Huthwaite's use of false pretenses and promises it did not intend to keep in order to gain access to Randstad's confidential matierials. Randstad's affirmative defense of unclean hands will not be stricken from its answer.

**4.    Order**

For the foregoing reasons, Huthwaite's motion to dismiss defendants' amended counterclaims and motion to strike defendants' amended affirmative defenses [#48] is granted in part and denied in part: Randstad's counterclaim of fraud is dismissed without prejudice and its affirmative defense of standing is stricken without leave to replead. Huthwaite's motion is otherwise denied. Huthwaite is directed to answer Randstad's counterclaims by November 14, 2006. The parties shall appear in court for a status hearing and scheduling conference on November 14 at 9:30 A.M.

Dated: October 24, 2006               ENTER: _____

JOAN HUMPHREY LEFKOW
United States District Judge